UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ERIC ANGUIANO,

       Petitioner,

v.                                Case No:   2:13-cv-830-FtM-38MRM

MICHAEL D. CREWS and FLORIDA
ATTORNEY GENERAL,

       Respondents.[1]

_____/

**OPINION AND ORDER[2]**

This matter comes before the Court upon a *pro se* petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Eric Anguiano ("Petitioner") (Doc. 1, filed November 25, 2013).   Petitioner, a prisoner of the Florida Department of Corrections, attacks the convictions entered by the Twentieth Judicial Circuit Court in and for Lee County, Florida for discharging a firearm from a vehicle and attempted second-degree murder with a

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 436 (2004) (citations omitted).   In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

[2] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.   Likewise, the court has no agreements with any of these third parties or their Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

firearm (Doc. 1 at 1).   Respondent filed a response to the petition (Doc. 12).   Petitioner

filed a reply (Doc. 19), and the petition is now ripe for review.

Petitioner raises seven claims in his petition.   Upon due consideration of the

pleadings and the state court record, the Court concludes that each claim must be

dismissed or denied.   Because the petition may be resolved on the basis of the record,

an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474

(2007) (if the record refutes the factual allegations in the petition or otherwise precludes

habeas relief, a district court is not required to hold an evidentiary hearing).

## I.     Background[3]

On June 13, 2008, the State of Florida charged Petitioner with discharging a

firearm from a vehicle, in violation of Florida Statute § 790.15(2) (count one) and

attempted second degree murder with great bodily harm, in violation of Florida Statute §§

782.04, 777.011, and 775.087(2)(a)(3) (count two) (Ex. 1).   A jury convicted Petitioner of

both counts as charged (Ex. 2; Ex. 3).   He was sentenced to concurrent terms of nine

years in prison on count one and twenty-five years in prison on count two (Ex. 4; Ex. 5).

Florida's Second District Court of Appeal affirmed Petitioner's convictions and sentences

without a written opinion (Ex. 8); *Anguiano v. State*, 17 So. 3d 294 (Fla. 2d DCA 2009).

On January 20, 2010, Petitioner filed a state petition for writ of habeas corpus in

which he raised one claim of ineffective assistance of appellate counsel (Ex. 9).   Florida's

Second District Court of Appeals denied the petition on May 11. 2010 (Ex. 10).

---

[3] Unless indicated otherwise, citations to exhibits are to those filed by Respondent
on June 12, 2014 (Doc. 14).   Citations to the trial transcript, located in exhibit three, will
be cited as (T. at ___).

On November 17, 2010, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 11). The post-conviction court denied two of the claims raised in the Rule 3.850 motion (Ex. 14).   After holding an evidentiary hearing on the third claim (Ex. 15), the post-conviction court denied the motion (Ex. 16).   The denial of the third claim was affirmed by Florida's Second District Court of Appeal (Ex. 19); *Anguiano v. State*, 123 So. 3d 566 (Fla. 2d DCA 2013).

Petitioner signed the instant 28 U.S.C. § 2254 petition on November 20, 2013 (Doc. 1).

## II.   <u>Governing Legal Principles</u>

### a.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   This standard is both mandatory and difficult to meet.   *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).   A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).   Notably, a state court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a);

*Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case." *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th

Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).   The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).   Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1*)*; *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

### b.   Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).   A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.*   This

is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.   That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### c.    Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from

granting habeas relief unless a petitioner has exhausted all means of available relief under state law.   Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.   *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).   In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750.   If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.   First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.   "To establish cause for a procedural default, a petitioner must demonstrate that some objective factor

external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted).   To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different absent the error complained of in his petition. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"   *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).   Actual innocence means factual innocence, not legal insufficiency.   *Bousley v. United States,* 523 U.S. 614, 623 (1998).   To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).   In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup,* 513 U.S. at 324).

### III.   Analysis

The facts in this case involve a drive-by shooting from a car in which Petitioner was a passenger.   During the shooting, a pedestrian was shot and seriously injured.   At trial, Petitioner argued that the car's driver and back-seat passenger were the actual shooters and that he merely ducked down in his seat to avoid the gunfire.

Petitioner raises the following seven claims in his habeas petition:  (1) the trial court erred by not granting Petitioner's motion for a judgment of acquittal when there was a reasonable hypothesis of innocence; (2) the trial court erred by allowing the prosecutor

to act as an expert during closing arguments; (3) the trial court erred in allowing the State to present fingerprint evidence of non-secretors; (4) appellate counsel was ineffective for failing to argue on appeal that the trial court erred by giving the principal instruction; (5) trial counsel ("Counsel") was ineffective for failing to adequately object to the trial court's reading of principal instruction; (6) Counsel was ineffective for failing to call Petitioner's doctor as a defense witness at trial to testify that Petitioner was physically incapable of shooting a gun; and (7) Counsel was ineffective for failing to object to the prosecutor's improper arguments during closing (Doc. 1 at 5-17). Each claim will be addressed separately.

### a.    Claim One

Petitioner asserts that the trial court erred by refusing to grant Petitioner's motion for a judgment of acquittal when there was a reasonable hypothesis of innocence. (Doc. 1 at 5). Specifically, he claims that evidence was presented at trial of a back-seat passenger who actually shot the victim while he (Petitioner) ducked down to protect himself. *Id.* at 6. Petitioner claims that the only time he (Petitioner) was directly observed with a gun in his hand was when he threw the guns out of the car window after the shooting and that his handling of the guns explained the presence of gun-shot residue on his hands. *Id.* Petitioner argues that "there is a reasonable hypotheses of innocence that Petitioner was present in the vehicle but was not involved in the shooting. Wherefore, the trial court erred in denying Petitioner's motion for a judgment of acquittal." *Id.*

Petitioner raised this claim on direct appeal where he argued, in terms of state law only, that "[t]he trial court should grant a judgment of acquittal in circumstantial evidence cases if the State fails to present evidence from which the jury can exclude every

reasonable hypothesis except that of guilt." (Ex. 6 at 17) (citing *State v. Law*. 559 So. 2d 187, 188 (Fla. 1989)).   Respondent argues that this claim is unexhausted (Doc. 12 at 8).

Respondent notes:

> When petitioner's trial counsel moved for a judgment of acquittal, he did not alert the trial court that he was challenging the state's proof on constitutional grounds.   Moreover, petitioner's arguments on direct appeal did not fairly present the appellate court the constitutional dimension of his argument as to the sufficiency of the evidence.   Petitioner did not label his issue as a federal claim and did not cite the United States Constitution or a case resting on constitutional grounds in support of his issue.   His issue was advanced at trial and on appeal in state law terms, which did not suffice to exhaust a federal question.

(Doc. 12 at 8).

A review of Petitioner's brief on appeal shows that he framed his claim and argument in terms of state law only without making reference to the United States Constitution, federal law, or even federal cases (Ex. 6).   For a habeas petitioner to fairly present a federal claim to state courts:

> It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made. Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts. While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.

*McNair v. Campbell*, 416 F.3d 1291, 1302–03 (11th Cir. 2005) (emphasis added) (internal citations and quotations omitted).   As part of such a showing, the claim presented to the state courts "must include reference to a specific federal constitutional guarantee, as well

as a statement of the facts that entitle the petitioner to relief." *Reedman v. Thomas*, 305 F. App'x 544, 545 (11th Cir. 2008) (internal citation omitted).   Petitioner's failure to apprise the state courts of the constitutional nature of this claim leaves it unexhausted on federal habeas review. 28 U.S.C. § 2254(b)(1).[4]

In his reply, Petitioner concedes that Claim One is unexhausted, but faults appellate counsel for failing to exhaust it for federal review (Doc. 19 at 1).   Although ineffective assistance of appellate counsel can operate to provide cause for the procedural default of a claim of trial court error, Petitioner must have first exhausted the underlying ineffective assistance of appellate counsel claim, which he did not do. *See Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000) (concluding that a federal habeas court is barred from considering a procedurally defaulted ineffective assistance of counsel claim as cause for procedural default of another claim); *Hill v. Jones*, 81 F.3d 1015, 1029–31 (11th Cir. 1996) (noting that the Supreme Court's jurisprudence on procedural default dictates that procedurally defaulted claims of ineffective assistance cannot serve as cause to excuse a default of a second claim). Nor has Petitioner presented new, reliable evidence to support an actual innocence claim. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Consequently, the ineffective assistance of appellate counsel claim, raised for the first time in Petitioner's reply (Doc. 19), does not satisfy the cause and prejudice, or

---

[4] Notably, although Petitioner now claims that the state court's denial of this claim "was contrary to clearly established federal law" and is "based on showing that there was a denial of a constitutional right," the argument supporting the instant claim is also presented solely in terms of state law (Doc. 1 at 5-6).   To the extent Petitioner urges that the trial court erred under Florida law when it denied his motion for a judgment of acquittal, such argument is not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

fundamental miscarriage of justice exceptions required to overcome the procedural default of Claim One. Florida's procedural rules and time limitations preclude a second direct appeal. Fla. R. App. P. 9.140(b)(3) (defendant wishing to appeal a final judgment must do so within "30 days following rendition of a written order").   Consequently, Claim One is procedurally barred and cannot be considered by this Court.

Even had Claim One been properly exhausted, Petitioner is not entitled to federal habeas corpus relief. *See* 28 U.S.C. § 2254 (b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). The Due Process Clause of the Fourteenth Amendment requires the state to prove each element of the offense charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). Under *Jackson*, federal courts must look to state law for the substantive elements of the offense, but to federal law for the determination of whether the evidence was sufficient under the Due Process Clause. *Coleman v. Johnson*, 566 U.S. 650 (2012).   Notably, unlike Florida the Florida standard, the federal sufficiency of the evidence standard, set forth in *Jackson* does not include a requirement that cases turning on circumstantial evidence exclude every reasonable hypothesis of innocence. *See United States v. Herrera*, 931 F.2d 761, 763 (11th Cir. 1991) (evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt) (citations omitted).   For federal due process review, "[t]he [only] relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

Under Florida law, shooting from a vehicle in violation of section 790.15(2) requires proof of two elements: (1) the defendant knowingly and willfully discharged a firearm from a vehicle; and (2) the discharge occurred within 1000 feet of any person. Fla. Stat. § 790.15(2) (2009). Second-degree murder is "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual." § 782.04(2), Fla. Stat. (2009). Within this context:

> [a]n act is imminently dangerous to another and evinces a "depraved mind" if it is an act or series of acts that: (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; and (2) is done from ill will, hatred, spite or an evil intent; and (3) is of such a nature that the act itself indicates an indifference to human life.

*Antoine v. State*, 138 So. 3d 1064, 1072 (Fla. 4th DCA 2014) (quoting *Wiley v. State*, 60 So. 3d 588, 591 (Fla. 4th DCA 2011)). Evidence was presented at trial that: multiple gunshots originated from the driver's side of the car in which Petitioner was riding (T. at 277); the victim identified Petitioner as the person in the front passenger seat when she was shot (T. at 83-84, 142); Petitioner lied to the police and claimed that he was not in the vehicle when the victim was shot (T. at 188); Petitioner threw the two guns, positively identified as those involved in the shooting, from the vehicle (T. at 281); gunshot residue was found on Petitioner's hands (T. at 248); spent shell casings were found on the front passenger floorboard of the car in which Petitioner was riding (T. at 147, 155); and photographs taken of the driver's seat headrest demonstrated that the bullets were fired from the front passenger seat (T. at 221). Given this evidence, a rational trier of fact could have found the essential elements of discharging a firearm from a vehicle and

attempted second-degree murder with a firearm beyond a reasonable doubt.   Therefore, in addition to being unexhausted, Claim One is denied on the merits.

### b.    Claim Two and Claim Seven

In Claim Two, Petitioner argues that the trial court erred when it allowed the prosecutor to act as an expert during closing argument (Doc. 1 at 7).   Specifically, he asserts that the prosecutor acted as a ballistics expert to speculate about the trajectory of the bullet inside the car. *Id.* at 8.   In Claim Seven, Petitioner asserts that Counsel was ineffective for failing to object to the prosecutor's statements. *Id.* at 21.   Petitioner does not identify the specific comments made by the state attorney that comprise this claim, but he raised Claim Two in his brief on direct appeal (Ex. 6), and identified the following prosecutor statements as demonstrating error:

> We know, that the defendant is in a wheelchair, and we know that that means he has limited mobility.   But I submit to you that that's the reason the shooting was so sloppy.
>
> And if you look at the picture of the headrest you can see the angle that they're coming from.   They're not coming from the back seat.   They are coming from the passenger seat.
>
> If you take a good look at these photographs, it suggests that it came from somebody who was sitting in the front passenger seat, and we know who that was.   We know it was the defendant.

(Ex. 6 at 24) (internal citations to the trial transcript omitted).   Florida's Second District Court of Appeal denied this claim without a written opinion (Ex. 8).

In his brief on direct appeal, Petitioner framed his arguments on direct appeal in terms of state law only (Ex. 6).[5]   Petitioner's failure to apprise the state courts of the

---

[5] Petitioner also relies only on his state-law arguments in the instant petition. Other than a conclusory statement that "the [trial court's] ruling was contrary to clearly established federal law," he does not direct this Court to a single federal case or statute

constitutional nature of this claim leaves it unexhausted on federal habeas review.   *See* discussion *supra* Claim One.   Petitioner concedes that he did not exhaust Claim Two for federal review (Doc. 19 at 1), but faults appellate counsel for failing to do so.   Again, Petitioner did not exhaust any underlying ineffective assistance of appellate counsel claim on this issue. *See* discussion *supra* Claim One.   Nor has Petitioner presented new, reliable evidence to support an actual innocence claim. Consequently, for the same reasons set forth in Claim One, *supra*, Claim Two is unexhausted and procedurally barred and cannot be considered by this Court.

Petitioner raised Claim Seven in his Rule 3.850 motion, and the post-conviction court denied the claim in a reasoned opinion, noting that, "[d]uring closing arguments, a prosecutor may point out inferences that can be reasonably drawn from the evidence" and that "[a]ll of the [prosecutor's] inferences and conclusions were reasonable in light of the evidence presented at trial" (Ex. 14 at 5-6).   Petitioner did not appeal the post-conviction court's denial of this claim, and as a result, it is also unexhausted.[6]

---

that would have precluded the state attorney's closing argument.

[6] Pursuant to Rule 9.141(b)(3) of the Florida Rules of Appellate Procedure, failure to fully brief and argue points on appeal after receiving an evidentiary hearing on a Rule 3.850 motion, constitutes a waiver of those claims. *See*, *e.g.*, *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (Florida prisoner must appeal denial of Rule 3.850 relief to exhaust remedies); *Cortes v. Gladish*, 216 F. App'x 897, 899-900 (11th Cir. 2007) (recognizing that when a petitioner receives an evidentiary hearing on his Rule 3.850 motion, his failure to address issues in his appellate brief waives those issues); *Coolen v. State*, 696 So. 2d 738, 742 n.2 (Fla. 1997) (Failure to fully brief and argue points on appeal constitutes a waiver of these claims.); *Cunningham v. State*, 131 So. 3d 793, 795 (Fla. 2d DCA 2012) (explaining that as of October 2010, "[i]f any ground is resolved after an evidentiary hearing, we require the appellant to process the appeal under rule 9.141(b)(3)."). Petitioner concedes that Claim Seven is unexhausted (Doc. 19 at 1).   He has not suggested any cause for his failure to exhaust this claim (other than ineffective assistance of appellate counsel), nor has he demonstrated the applicability of the actual innocence exception. *See* discussion *supra* Claim One.

However, even assuming *arguendo* that Claims Two and Seven were exhausted and that Claim Two raises a federal due process claim, Petitioner is not entitled to federal habeas corpus relief because the prosecutor's remarks were fair comment on the evidence. *See Parker v. Head*, 244 F.3d 831, 838 (11th Cir. 2001) ("The reversal of a conviction or sentence is warranted when improper comments by a prosecutor have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

In *Ruiz v. State,* the Florida Supreme Court noted that "the role of counsel in closing argument is to assist the jury in analyzing [the] evidence, not to obscure the jury's view with personal opinion, emotion, and nonrecord evidence[.]" 743 So. 2d 1, 4 (Fla. 1999).   The *Ruiz* court explained that "[t]he assistance permitted includes counsel's right to state his contention as to the conclusions that the jury should draw from the evidence." *Id.* (citing *United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978)).   The Florida Supreme Court has further stated that "[t]he proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." *Robinson v. State*, 610 So.2d 1288, 1290 (Fla. 1992) (quoting *Bertolotti v. State*, 476 So.2d 130, 134 (Fla. 1985)).

During Petitioner's trial, testimony was heard from crime scene technician Donna Mansell (T. at 216-24).   Mansell took photographs of the crime scene, including the inside of the car from which the shooting occurred. *Id.* at 218.   She testified that seven bullet holes were present on or in the car, and that each appeared to have originated from inside the car. *Id.* at 220.   As to the bullet holes in the headrest, she was questioned by

the state prosecutor as follows:

> Q.    Okay.   What are those photographs of?
>
> A.    This is the headrest of the driver's front seat which has holes in it on the top part of it.
>
> Q.    All right.   And did you make any observations about the headrest?
>
> A.    Yes, I did.
>
> Q.    Can you tell the jury what those were?
>
> A.    What it shows, it shows the bullet coming from the passenger side of the vehicle towards the outside of the headrest of the driver's seat.   The reason I looked at this is because of the material facing outwards of the holes, so this is what I observed when I was photographing.
>
> Q.    And the holes that face – the stuffing is coming out of, that's closest to what window?
>
> A.    To the driver's side window.

(T. at 221).   During closing argument, the prosecutor reviewed Mansell's testimony and urged that the photographs of the bullet holes showed that the bullets originated from inside the car and "stated her contention" that the bullets had come from the passenger seat.   This is allowed under Florida law.[7]   Accordingly, the trail court did not err by

---

[7] The post-conviction court in its order on Petitioner's Rule 3.850 motion and the appellate court, by affirming his conviction on direct appeal, determined that the prosecutor's statements were allowed under Florida law.   Accordingly, Petitioner cannot demonstrate prejudice from Counsel's failure to object to the prosecutor's closing argument because the state courts have already told us how this issue would have been resolved had Counsel raised the objection suggested in the instant habeas petition. An objection would have been overruled. It is "a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

allowing the prosecutor's comments, and in addition to being unexhausted, Claim Two is denied on the merits.   Moreover, Petitioner cannot satisfy *Strickland*'s performance prong on Claim Seven because, based on *Ruiz* and *Robinson*, reasonable competent defense counsel could have concluded that she had no grounds on which to object to the prosecutor's statements. *See Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").   In addition to being subject to dismissal as unexhausted, Claim Seven is denied on the merits.

### c.      Claim Three

Petitioner asserts that the trial court erred by allowing the state to present "fingerprint evidence regarding non-secretors." (Doc. 1 at 9).   Specifically, he asserts that the State, over Counsel's objection, was allowed to "present evidence that prints might not be present on the gun if [Petitioner] is a non-secretor" (Ex. 6 at 26).   Petitioner notes that no evidence was presented at trial that he is a non-secretor. *Id.*   Petitioner raised this claim on direct appeal where he argued that the court had erred under state law when it admitted this evidence. The brief on appeal did not refer to the United States Constitution or to a due process violation. *Id.*

Petitioner admits that Claim Three is unexhausted, but faults appellate counsel for failing to raise the constitutional nature of this claim on direct appeal (Doc. 19 at 1). Again, Petitioner did not exhaust any underlying ineffective assistance of appellate counsel claim.   Nor has Petitioner presented new, reliable evidence to support an actual innocence claim. Consequently, the ineffective assistance of appellate counsel claim,

raised for the first time in Petitioner's reply, does not satisfy the cause and prejudice, or fundamental miscarriage of justice exceptions necessary to overcome the procedural default of Claim Three. *See* discussion *supra* Claim One.   Consequently, Claim Three is unexhausted and procedurally barred and cannot be considered by this Court.

Even assuming that Claim Three was exhausted and raises a due process claim, Petitioner is not entitled to habeas relief.   Generally, federal courts do not review a state court's application of state rules of evidence or procedure. *See Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *McCullough v. Singletary*, 967 F.2d 530, 535–36 (11th Cir. 1992) ("State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases.").   However, a federal court may grant habeas relief where the error rises to the level of a constitutional violation by "result[ing] in a denial of fundamental fairness." *Dickson v. Wainwright*, 683 F.2d 348, 350 (11th Cir. 1982) (citing *Anderson v. Maggio*, 555 F.2d 447, 451 (5th Cir. 1977)).   Furthermore, "the erroneous admission of prejudicial evidence can justify habeas corpus relief if it is 'material in the sense of a crucial, critical, highly significant factor.'" *Id.* (quoting *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976)).

In the instant case, Counsel made a motion in limine to exclude any opinion testimony from the crime scene investigator as to why there might be no fingerprints on the guns found at the crime scene (T. at 207).   The prosecutor argued that Counsel should not be allowed to argue to the jury that there were no prints on the guns (and

hence, Petitioner must not have touched them) without the state being allowed to present alternate theories as to why that could be. *Id.* at 208.   The judge denied Counsel's motion in limine "as long as there's first, testimony that fingerprints were attempted to be taken." *Id.* at 211-12.

During the state's case, crime scene investigator Donna Mansell was asked about the guns collected from the crime scene:

> Q.   Do you know if any fingerprints came back to those guns?
>
> A.   No, there were not.
>
> Q.   Do you know of any reasons why prints might not be found on a gun?
>
> A.   There's a number of reasons.   A non-secretor.
>
> Q.   What's a non-secretor?
>
> A.   Someone who doesn't leave prints.   There's the surface of the weapon – rough surfaces are harder to lift a print.   Maybe more than one person touched the weapon.   You know, overlay.   So what you look for as far as comparison – or evaluation, are latents of value in that case.   And the possibility of them wiping them off.

(T. at 222).   On cross-examination, Mansell admitted that the report from the Florida Department of Law Enforcement stated that "no latent prints of value" were found on the guns, rather than no prints at all (T. at 223-24).

Given that no identifiable prints were found on the guns, and given that Petitioner was observed handling at least one of the guns as it was thrown from the car in which he was riding, Mansell's brief testimony about non-secretors did not tend to prove or disprove that Petitioner handled the guns at issue.   Accordingly, the testimony was not a "crucial, critical, highly significant factor" in Petitioner's conviction, and the state court's denial of

this claim did not violate due process.   In addition to being unexhausted, Claim One is denied on the merits. 28 U.S.C. § 2254(d).

### d.    Claim Four and Claim Five

In Claim Five, Petitioner asserts that Counsel was ineffective for failing to object to the trial court's reading of the principal instruction on the basis that there was no evidentiary basis for the instruction, and it misled and confused the jury (Doc. 1 at 12).[8] Although Petitioner admits that Counsel objected to the instruction during the charging conference, he urges that Counsel "should have been more articulate" and "nowhere in the record does it show that Petitioner participated or that he intended the crime be committed[.]" *Id.* at 13.   In Claim Four, Petitioner asserts that appellate counsel was ineffective for failing to raise this claim on direct appeal (Doc. 1 at 11).

Petitioner raised Claim Five in his Rule 3.850 motion (Ex. 11). The post-conviction court denied the claim on the ground that Counsel had objected to the principal instruction

---

[8] The principal instruction reads:

> If the defendant helped another person or persons commit a crime, the defendant is a principal and must be treated as if he had done all the things the other person or persons did if:
>
> 1.    the defendant had a conscious intent that the criminal act be done and
>
> 2.    the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually commit the crime.
>
> To be a principal, the defendant does not have to be present when the crime is committed.

Fla. Std. J.I. (criminal) 3.5(a). This instruction was read to the jury by the trial court (T. at 376-77).

(Ex. 14).   The post-conviction court recognized that Petitioner asserted that Counsel "used the wrong reasoning in objecting the principal instruction," but determined:

> Defendant has "cherry-picked" certain parts of defense counsel's argument to make it seem as if counsel's "basis" for objecting to the jury instruction was other than lack of evidence; however, as the record shows, the grounds Defendant cites to as to why counsel objected are actually smaller facets of counsel's overall argument of lack of evidence.

(Ex. 14 at 3).   Petitioner did not appeal the post-conviction court's denial of this claim, and as a result, it is unexhausted for habeas review. *See* discussion *supra* Claim Seven, note 6.

However, even if Petitioner had exhausted Claim Five, it would not merit federal habeas corpus relief.   As recognized by the post-conviction court, Counsel strenuously argued during the charging conference that the principal instruction should not be read because: (1) the state had prosecuted Petitioner on the theory that he was the actual shooter, not as a principal; and (2) the only evidence presented at trial was that Petitioner was the actual shooter (T. at 306-16).   The prosecutor countered Counsel's argument by noting that defense evidence had been offered from which the jury could conclude that Petitioner acted as a principal in the crime. *Id.* at 313.   The prosecutor stated that "Counsel put on a witness saying that it was the other guy [who] was shooting, but again, [Petitioner] was getting rid of the gun for him, and that he was in the car and they could find that he was involved in that shooting." *Id.*   Counsel's objection to the principal instruction was overruled. *Id.*

Given that Counsel objected to the principal instruction on the very grounds Petitioner now urges, he has not satisfied *Strickland*'s performance prong.   Moreover, Petitioner was convicted as the actual shooter, not on a principal theory.   The jury found

him guilty of attempted second degree murder with specific findings that he possessed and discharged a firearm and inflicted great bodily harm on the victim as a result (Ex. 3). Accordingly, Petitioner cannot demonstrate prejudice from Counsel's alleged failure to present a "more articulate" argument on the principal instruction.   In addition to being unexhausted, Claim Five fails to satisfy either *Strickland* ineffective assistance prong and is denied on the merits.

Claim Four also fails on the merits.   A review of the record demonstrates that the principal instruction was properly read to the jury.   Under Florida law, it is generally error to instruct the jury on principals where there is no evidence to support an aiding and abetting theory of guilt. *See Alvarez v. State*, 15 So.3d 738, 748 (Fla. 4th DCA 2009); *McGriff v. State*, 12 So.3d 894, 895 (Fla. 1st DCA 2009); *Masaka v. State*, 4 So.3d 1274, 1284 (Fla. 2d DCA 2009); *Thomas v. State*, 617 So.2d 1128, 1128 (Fla. 3d DCA 1993). A conviction for aiding and abetting requires the State to prove: (1) the defendant's intent that the crime be committed; and (2) the defendant's performance of some act to assist in the commission of the crime. *See* § 777.011, Fla. Stat. (1995); *Staten v. State*, 519 So.2d 622, 624 (Fla. 1988).

In this case, testimony was presented at trial that Petitioner was in the car with two other people when the shooting occurred, and he was observed tossing two guns from the car (T. at 83-84,139).   Reasonable competent appellate counsel could have concluded that the evidence was sufficient to support an instruction on the principal theory of guilt.   Therefore, Claim Four fails to satisfy *Strickland*'s performance prong, and does not warrant federal habeas corpus relief. *See Diaz v. Sec'y, Fla. Dep't of Corr.*, 402 F. 3d

1136, 1145 (11th Cir. 2005) ("[N]onmeritorious claims that are not raised on appeal do not constitute ineffective assistance of counsel.").

### e.   Claim Six

Petitioner asserts that Counsel was ineffective for failing to call Dr. Monserrate, Petitioner's doctor, as a defense witness (Doc. 1 at 14).   Petitioner asserts that Dr. Monserrate may have testified that Petitioner was incapable of firing the gun because of his physical limitations.[9]  *Id.*   Petitioner raised this claim in his Rule 3.850 motion, and an evidentiary hearing was held (Ex. 15).   Afterwards, the post-conviction court denied the claim on *Strickland*'s prejudice prong, specifically noting that Dr. Monserrate testified at the evidentiary hearing that "Defendant was sufficiently able to use his left hand, and it was his professional opinion, one he stated he would have given at the original trial had he been called, that Defendant could have fired the gun." (Ex. 16 at 5).   The post-conviction court's rejection of Claim Six was affirmed by Florida's Second District Court of Appeal (Ex. 19).

Petitioner does not explain how the state courts' rejection of Claim Six was contrary to *Strickland* or based upon an unreasonable determination of the facts.   When asked at the evidentiary hearing as to whether Petitioner was capable of pulling the trigger with his left hand, Dr. Monserrate stated that "[i]t could have been possible" and agreed that, had he been called to testify at Petitioner's trial, his opinion would not have differed (Ex. 15 at 71).   Petitioner now urges that Dr. Monserrate's statement "does not mean that [Petitioner] did or was capable of doing it" and that "the jury should have been able to

---

[9] Petitioner urges that he had injuries to his left arm at the time of the shooting and is paralyzed from the chest down (Doc. 1 at 15).

decide after hearing Dr. Monserrate if Petitioner was capable of firing the gun that shot the victim." (Doc. 1 at 15).    Petitioner misunderstands his burden under *Strickland*. "*Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different" if Counsel had performed as Petitioner now asserts she should have.  *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (quoting *Strickland*, 466 U.S. at 694).   In the instant case, Petitioner does not show that the outcome of his trial would have differed if Dr. Monserrate had testified; rather, he urges that the jury may have disbelieved Dr. Monserrate's testimony had Counsel called him to testify, and therefore, Counsel should have done so (Doc. 1 at 15).   In other words, Petitioner relies on mere speculation to support his claim of *Strickland* prejudice. Petitioner's circular argument is insufficient to demonstrate entitlement to federal habeas relief, and Claim Six is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.    Certificate of Appealability[10]

Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA").   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To

_____

[10]  Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Id.* As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  The Florida Attorney General is **DISMISSED** as a named Respondent.

2.  The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Eric Anguiano is **DENIED**, and this case is dismissed with prejudice.

3.  Petitioner is **DENIED** a certificate of appealability.

4.  The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 10th day of March, 2017.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Eric Anguiano
Counsel of Record